**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **No.: 5:12CR50035-001** |
| | ) | **No.: 5:13CR50004-001** |
| **BRANDON LYNN BARBER** | ) | |

**SEPARATE DEFENDANT BRANDON BARBER'S RESPONSE TO GOVERNMENT'S
MEMORANDUM REGARDING RESTITUTION**

Comes now Separate Defendant Brandon Barber ("the Defendant"), by and through his attorney, and for his Response to the Government's Memorandum Regarding Restitution, states:

**Standard of Proof**

The Government is requesting that this Court order total restitution to the victims in the amount of $16,198,996.39, and as set forth herein, the Defendant disputes whether this amount is proper. "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C.A. § 3664(e). For purposes of restitution, a victim must be "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C.A. § 3663A(a)(2). As noted by the Government, (i) the amount of any restitution must be limited to the *actual* loss *directly caused* by the Defendant's criminal conduct (United States v. Chaikai, 695 F.3d 741, 748 (8th Cir. 2012)); (ii) only the *actual, provable* loss realized by the victims can be ordered to be paid as restitution (United States v. Martinez, 690 F.3d 1083, 1088 (8th Cir. 2012)); (iii) only the loss *caused* by the specific conduct that is the

1

basis of the offense of the conviction may be included in any restitution ordered (United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007)); and there cannot be an unreasonably tenuous causal connection between the Defendant's conduct and the victim's losses (United States v. Spencer, 700 F.3d 317, 323 (8th Cir. 2012)).  The Government bears the burden of proving the amount of restitution by a preponderance of the evidence.  United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001).

<u>**Argument**</u>

In this case, the Government is claiming that Legacy Bank, Enterprise Bank and First Federal Bank were each directly and proximately harmed as a result of the Defendant's submissions of falsified statements to the institutions in an actual, provable amount of $16,198,996.39, collectively and directly caused by the Defendant's conduct.  The Government cannot prove this claim to be true by a preponderance of the evidence submitted with its Memorandum Regarding Restitution, and for the reasons set forth herein, the Defendant respectfully requests that the Court order total restitution only to First Federal Bank in the amount of $550,000.00.

The Defendant does not dispute that the proper amount of restitution to be ordered paid to First Federal Bank is $550,000.00 for the reasons set forth by the Government and as calculated by the Government in its Memorandum.  The Defendant, however, respectfully submits that the Government has failed to meet its burden of proof regarding the $15,648,996.39 the Government has requested be ordered as restitution to be paid to Legacy Bank and to Enterprise Bank, and objects to such an amount being ordered paid as restitution to these entities.

As to Legacy Bank and Enterprise Bank, the Government only presents two primary showings in the evidence it offers the Court.  First, that the Defendant submitted falsely inflated financial statements to each bank in the process of applying for loans from them.  Second, that the total amount of outstanding principle and interest remaining owed to both banks on said loans totals $15,648,996.39, after discounting the total in an amount equal to the amount of the bids each bank made for the collateral property at the time such property was sold to the banks at foreclosure sales. These two showings do not collectively prove by a preponderance of the evidence that the banks suffered actual losses totaling $15,648,996.39 as a direct and proximate result of the Defendant's conduct, i.e. submissions of falsified statements to the institutions.

The Government presents no evidence indicating that Legacy Bank and Enterprise Bank were unaware that the financial statements submitted by the Defendant were inflated.  There is no Affidavit submitted from an officer of either bank stating that the respective bank was not aware of the true and actual financial positions of the Defendant and borrower at the time the statements were submitted after performing the bank's due diligence inquiries.  The Government has investigated and prosecuted this matter for years and yet no evidence has been offered to show that the banks did not know that the financial statements were inflated.

Furthermore, even assuming the banks did not know that the true financial positions of the Defendant and borrower were being misrepresented to the banks in the submitted financial statements, there has been no evidence submitted that Legacy Bank and Enterprise Bank would not have loaned *any* money to the borrower had the banks known the true financial positions of the Defendant and borrower at the time the loans were issued.  For example, it is quite possible that the banks would have loaned the same amounts to the borrower, even with accurate financial

statements submitted, but at a much higher interest rate or on other less favorable terms for the borrower.  "The court should inquire into whether but-for the defendant's lies the bank would have made the loan at all.  If the loan would still have been made but at a higher rate to compensate for the concealed risks, then the bank (victim) would only be entitled to the incremental profits from the increased rate."  Arthur Durst, Property and Mortgage Fraud Under the Mandatory Victims Restitution Act: What is Stolen and When is it Returned?, 5 Wm. & Mary Bus. L. Rev. 279 at 293 (2014)(citing United States v. Berger, 473 F.3d 1080, 1107 (9th Cir. 2007)).  Likewise, it's reasonable to assume that the banks would simply have reduced the amount of the loans issued had they received truthful financial statements (the loans were for 100% of the value of the collateral).  "The bank or lender would not be able to claim that but-for the fraud the loan would not have been made, therefore it would not be entitled to the amount of the loan in restitution.  'Fraud for property' situations seem to be a more likely fit for this scenario than schemes for profit.  The elaborate lies in 'fraud for profit' schemes are likely so significant that the bank would have never made a loan."  Id.  The Government has also not addressed what value or consideration the banks gave to the fact the loans were personally guaranteed by daughters of Johnny Chambers, owner of Chambers Bank, regardless of the financial position of the Defendant or the borrower.  In other words, the Government has not submitted anything upon which the Court could determine that Legacy Bank and Enterprise Bank would have denied the relevant loan applications in total but for the false financial statements submitted.

In addition, the Government has not submitted any evidence showing how the prevailing market forces adversely affecting the construction and real estate development industries in

Northwest Arkansas and across the country post-2005 did not contribute to or cause the borrower's inability to avoid defaulting on the loans, and thus to the banks' losses, as opposed to the actual financial condition of the Defendant, the borrower or individual guarantors associated with the loans.  Accordingly, the Government has not met its burden of proving that the entire amount of Legacy Bank's and Enterprise Bank's losses was directly and proximately caused as a result of the Defendant's submission of false statements.

Even if the Court determines that Legacy Bank and Enterprise Bank are victims for purposes of ordering restitution, it is entirely unclear what amount of the loans/losses are attributable to the Defendant's conduct and what amount is not.  As the U.S. Probation Office stated in its July 23, 2014 Presentencing Report (Doc Nos. 145 & 214), Paragraph 198, "[a]lthough the government has provided a list of victim banks and loss amounts for guideline calculations, the total restitution due is still unclear."  When the calculation for restitution becomes too burdensome, the Mandatory Victims Restitution Act of 1996 mandates that restitution should not be awarded.  18 U.S.C. § 3663A; S. REP. NO. 104-179, at 19 (1996) ("[I]t is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution.").  In the absence of any *actual, provable* loss of these two banks that has been shown by the Government to be *directly caused* by the Defendant's conduct, there is insufficient evidence for the Court to enter an order of restitution as to Legacy Bank and Enterprise Bank.  It is important to note that unlike the loan from First Federal Bank that involved a $550,000.00 cash-out scheme, there was no cash taken or gain realized by the Defendant or others from the loans issued by Legacy Bank or Enterprise Bank that is readily identifiable as a loss caused by fraudulent conduct.

Finally, in the event the Court orders any restitution to be paid to Legacy Bank and/or Enterprise Bank, the Defendant respectfully requests that such order indicate that the amounts to be paid to Legacy Bank and/or Enterprise Bank are not in addition to any amount owed under the civil judgments in the amount of $8,470,977.96 currently in force against the Defendant in favor of Legacy Bank and $7,608,427.37 currently in force against the Defendant in favor of Enterprise Bank related to and arising from the loan transactions that are the subject of the Government's Memorandum Regarding Restitution, and that any payment by the Defendant towards such judgments will be a credit against any amount owed to Legacy Bank and/or Enterprise Bank under an order of restitution.

WHEREFORE, the Defendant prays that the Government's request for restitution be granted only in the amount of $550,000.00 as to First Federal Bank and that the Government's restitution request be otherwise denied for the reasons set forth herein, and that the Defendant be granted all other proper relief to which he may be entitled.

Respectfully submitted,

W. Asa Hutchinson III
W. ASA HUTCHINSON III
Arkansas Bar No. 2001115
THE ASA HUTCHINSON LAW GROUP, PLC
3300 Market Street, Suite 404
Rogers, Arkansas 72758
(479) 878-1600 – Phone
(479) 878-1605 – Facsimile
ahutchinson@ahlawgroup.com
*Attorney for Brandon Lynn Barber*

## CERTIFICATE OF SERVICE

I, W. Asa Hutchinson III, hereby certify that on December 12, 2014, I filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of the foregoing pleading to:

Conner Eldridge
U.S Attorney's Office
414 Parker Avenue
Fort Smith, AR 72901
conner.eldridge@usdoj.gov


Kenneth P. Elser
U.S. Attorney's Office
414 Parker Avenue
Fort Smith, AR 72901
kenny.elser@usdoj.gov


/s/ W. Asa Hutchinson III
W. Asa Hutchinson III